UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MEGAN A. YOUNG**, on behalf of herself and all others similarly situated,<br><br>    *Plaintiff*,<br><br>v.<br><br>**CERTEGY PAYMENT SOLUTIONS, LLC** and **COMPLETE PAYMENT RECOVERY SERVICES, INC.**,<br><br>    *Defendants*. | Civil Action No. 21-<br><br>CLASS ACTION<br><br>Jury Trial Demanded |

## COMPLAINT - CLASS ACTION

### I.  PRELIMINARY STATEMENT

1. This is a consumer class action brought on behalf of consumers subjected to Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"); the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"); and the Massachusetts Consumer Protection Act, Mass. Gen. Laws Ch. 93A §§ 1-11, Ch. 93, § 49 ("MCPA"). Defendants violated these laws by engaging in abusive, deceptive, and unfair collection and consumer reporting practices and by unlawfully taking from Plaintiff, and similarly situated consumers, unauthorized fees.

### II.  JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 15 U.S.C. § 1692k and 28 U.S.C. § 1331, and supplemental jurisdiction exists for the state law claims under 28 U.S.C. § 1367.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### III.  PARTIES

4. Plaintiff MEGAN A. YOUNG is an adult individual who resides in Seekonk, Massachusetts.

5. Defendant CERTEGY PAYMENT SOLUTIONS, LLC ("Certegy") is a business entity that lists its headquarters as P.O. Box 7189, Clearwater, Florida 33758.[1] At all times pertinent hereto, Defendant Certegy was a "debt collector" within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and a "person" and a "consumer reporting agency" ("CRA") within the meaning of the FCRA, 15 U.S.C. §§ 1681a(b) and (f), respectively.

6. Defendant COMPLETE PAYMENT RECOVERY SERVICES, INC. ("CPRS") is a business entity regularly engaged in the business of collecting debts in this Commonwealth with its principal place of business located at 8935 Prominence Parkway, Suite 200, Jacksonville, Florida 32256. The principal purpose of Defendant CPRS is the collection of debts using the mails and telephone, and Defendants regularly attempt to collect alleged debts originally due to another.

7. Defendants CPRS and Certegy are corporate affiliates that work in concert. Both Defendants are owned by Fidelity National Information Services, Inc., a publicly traded company with headquarters in Jacksonville, Florida.

### IV.  FACTUAL ALLEGATIONS

8. On August 17, 2020, Plaintiff purchased clothing for her children at a Marshalls department store located in South Dennis, Massachusetts.

9. Plaintiff paid for her children's clothing with check number 5236, drawn from her Bank of America ("BOA") checking account, in the amount of $117.83.

---

[1] *See* CERTEGY PAYMENT SOLUTIONS, LLC, *Contact Page*, available at https://certegy.com/contact-page/ (last viewed March 31, 2021).

10. Plaintiff's BOA checking account statement for the period of August 21, 2020 to September 21, 2020 shows that check number 5236 to Marshalls was presented to the bank at a time when Plaintiff had sufficient funds in her BOA account than the $117.83 required to satisfy her obligation to Marshalls.

11. Certegy's regular business practice with respect to merchants such as Marshalls is to provide a check verification and collection service, whereby it informs the merchant whether a checking transaction should be approved based upon a consumer's past check-writing history, and if the check does not clear and/or is returned for insufficient funds, to acquire ownership of a consumer's check and undertake the responsibility to collect payment on same.

12. As such, Certegy is a debt collector within the meaning of section 1692a(6) of the FDCPA and person and consumer reporting agency under the FCRA.

13. Despite Plaintiff's check having been posted to her BOA account on August 24, 2020, when that account had more than sufficient funds to pay the check, Defendant CPRS, on behalf of Certegy, sent Plaintiff a collection letter dated August 27, 2020 concerning the transaction with Marshalls.

14. The August 27, 2020 dunning letter advised that Certegy had paid Marshalls for the allegedly unpaid check and was now the "owner" of the check.

15. CPRS demanded that Plaintiff pay the check amount of $117.83 plus a "RETURNED CHECK SERVICE CHARGE" of $25.00 and remit a "TOTAL DUE" of $142.83."

16. Following receipt of the August 27, 2020 letter from CPRS, Plaintiff participated in a three-way telephone call with a representative of BOA and a representative of Certegy.

17. The Certegy representative demanded that Plaintiff pay Certegy the sum of $142.83 to satisfy the alleged debt.

18. During that telephone call, the BOA representative confirmed to Certegy's representative that Plaintiff's account had sufficient funds and that check number 5236 had in fact cleared.

19. The Certegy representative refused to accept the BOA representative's verbal confirmation that Plaintiff's check had cleared.

20. Instead, the Certegy representative demanded that BOA send Plaintiff a letter confirming that the check had cleared, and that Plaintiff then forward a copy of said written confirmation to Certegy at a specific address, namely Customer Care Department, P.O. Box 30046, Tampa, Florida 33630-3046.

21. By letter dated September 8, 2020, BOA confirmed to Plaintiff that check number 5236 had cleared Plaintiff's BOA checking account on August 24, 2020.

22. Plaintiff immediately forwarded a copy of the September 8, 2020 BOA letter to the Tampa, Florida address provided by Certegy's representative during the three-way telephone call.

23. Upon information and belief, Certegy received Plaintiff's correspondence, including the BOA letter dated September 8, 2020, on or about September 15, 2020.

24. On September 24, 2020, Plaintiff received a dunning telephone call from a representative of CPRS that demanded she pay the Marshalls check and the $25 returned check service charge. When Plaintiff responded that she had already provided Certegy with the BOA confirmation that the check had cleared by sending the BOA letter to the address she had been instructed to use, the CPRS representative told her that was the wrong address and that the BOA confirmation should instead have been sent to CPRS at 8935 Prominence Parkway, Suite 200, Jacksonville, Florida 32256.

25. On September 25, 2020, Plaintiff followed those instructions and sent a second

copy of the BOA letter to the CPRS address in Jacksonville, Florida.

26. On September 27, 2020, Plaintiff received a letter dated September 18, 2020 from Certegy informing Plaintiff that it had investigated her dispute regarding check number 5236 and had determined that the report of the bounced check was accurate and would remain in Plaintiff's consumer file.

27. By letter dated October 1, 2020, CPRS sent a second dunning letter to Plaintiff seeking payment of $142.83.

28. The October 1, 2020 letter from CPRS stated in pertinent part as follows:

> You have not responded to any of the previous request (sic) for payment of your Electronic check #5236 payable to Marshalls 460 for $117.83....
>
> Certegy Payment Solutions, LLC is the owner of your Electronic Check and is our client. We are proceeding with more collection efforts because of your failure to resolve this matter.
>
> Information regarding your dishonored check has been recorded by our client in its national check database used by retail stores for check verification. If the item remains unpaid, you may be denied check writing privileges. To resolve this matter, remit payment for the Total Amount Due of $142.83.

29. The October 1, 2020 letter confirmed that CPRS had communicated credit information to its client Certegy, which reported that information in its "national check database." CPRS knew or should have known that reporting that information was false, in violation of section 1692e(8) of the FDCPA.

30. Upon information and belief, CPRS did not report to Certegy, and Certegy did not note in its "national check database," that the alleged debt was disputed by Plaintiff, in violation of section 1692e(8) of the FDCPA.

31. Upon information and belief, Defendants send thousands of dunning letters to consumers substantially similar in form and content to the September 18 and October 1, 2020 dunning letters sent to Plaintiff.

32. Certegy employs and/or works in concert with its corporate affiliate CPRS to collect funds from consumers who have allegedly failed to make payment by check because of allegedly non-sufficient funds.

33. As they did in the case of Plaintiff, Defendants also demanded a "returned check service charge" from consumers without any contractual or legal authority to do so.

34. On or about February 19, 2021, Plaintiff wrote a letter to Certegy requesting a copy of all information in her consumer file maintained by Certegy.

35. In response, Certegy sent a letter to Plaintiff seeking more personal identifying information from her.

36. On or about March 10, 2021, Plaintiff wrote back to Certegy and supplied Certegy with all the requested information.

37. On or about March 29, 2021, Plaintiff received what was entitled a Consumer File Disclosure Report ("File Disclosure") from Certegy, dated March 23, 2021.

38. The File Disclosure did not disclose that Certegy had refused to authorize payment of the August 17, 2020 check to Marshalls.

39. Certegy did not provide Plaintiff with a full disclosure of her consumer file, in violation of section 1681g of the FCRA.

40. On several occasions subsequent to the August 17, 2020 transaction at Marshalls, Plaintiff attempted to pay for items with a check from her BOA account at other stores, including the Staples and Michaels stores in her hometown of Seekonk, Massachusetts.

41. Plaintiff is a schoolteacher and often shops at such stores for school supplies for her students that the local school district is unable to provide.

42. Because Plaintiff is a frequent shopper at such stores, she is personally recognized

and known by the store staff.

43. On or about August 31, 2020, Plaintiff attempted to purchase school supplies for her students at a Staples store in Seekonk, Massachusetts. Although there were sufficient funds in her BOA checking account at the time, Plaintiff's check was rejected by Staples.

44. At Staples' request, Plaintiff then wrote a second check for the school supplies in the same amount, which was also rejected.

45. On information and belief, Staples' refusal to accept Plaintiff's checks was based on information provided to Staples by Certegy.

46. On or about September 13, 2020, Plaintiff attempted to purchase school supplies for her students in the amount of $61.73 at a Michaels store in Seekonk. When that check was rejected, Plaintiff then wrote a second check to Michaels in the same amount. Although there were sufficient funds in her BOA checking account at the time, Plaintiff's checks were rejected by Michaels.

47. Michaels provided Plaintiff with a printed notice that it did not accept her checks based on "INFORMATION PROVIDED BY CERTEGY PAYMENT SOLUTIONS, LLC."

48. The stores' refusal to accept Plaintiff's checks, which was publicly communicated to her by store staff who knew her personally from previous shopping trips, in the presence and within the hearing of other shoppers, caused Plaintiff deep embarrassment and humiliation.

49. The March 23, 2021 File Disclosure that Certegy sent to Plaintiff did not disclose that Certegy had refused to authorize payment of the September 13, 2020 check to Michaels. In addition, while it referenced the Staples transactions, it stated that the transaction "received a decline recommendation from Certegy because our [its] records indicate[d] that there is negative information on file, most typically due to a returned check." Yet the File Disclosure displayed no

negative check writing history. In fact, it stated "No Information on File." Thus, Certegy informed the Plaintiff that it was reporting negative information about her, but refused to tell her what it was. As such, Certegy violated section 1681g of the FCRA by failing to disclose the declined Marshall's and Michael's transactions, along with the negative history that it was reporting about her.

50. Defendants' actions as described above are consistent with their standard policies and practices for collecting alleged consumer "debts" associated with allegedly bounced checks, including additional unauthorized and unlawful "returned check service charges" in the amount of $25.00 or more.

51. In 2013, Certegy entered into a settlement with the Federal Trade Commission ("FTC") and agreed to pay a civil penalty of $3,500,000 for violations of the FCRA.[2]

52. The FTC had alleged in its Complaint, among other things, that Certegy failed to follow reasonable procedures to assure maximum possible accuracy of consumers' report information, failed to adequately track the handling and resolution of consumer disputes, and failed to promptly delete inaccurate or unverifiable information.[3]

53. In addition to paying the civil penalty, Certegy also agreed to improve its business practices to comply with the FCRA.[4]

---

[2] *See* FEDERAL TRADE COMMISSION, *Certegy Check Services to Pay $3.5 Million for Alleged Violations of the Fair Credit Reporting Act and Furnisher Rule*, available at https://www.ftc.gov/news-events/press-releases/2013/08/certegy-check-services-pay-3.5-million-alleged-violations-fair (last viewed March 31, 2021).

[3] *See* FEDERAL TRADE COMMISSION, *Complaint for Civil Penalties, Permanent Injunction, and Other Equitable Relief*, available at https://www.ftc.gov/sites/default/files/documents/cases/2013/08/130815certegycmpt.pdf (last viewed March 31, 2021).

[4] *See* FEDERAL TRADE COMMISSION, *Stipulated Final Judgment and Order for Civil Penalties, Permanent Injunction, and Other Equitable Relief*, available at

54. Thus, for more than seven years, Certegy has known of and agreed to follow its obligations under the FCRA and yet has willfully and recklessly continued to violate the FCRA as alleged herein.

55. At all times pertinent hereto, Defendants were acting in concert with each other and by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

56. The acts alleged against the Defendants were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses.

57. Each Defendant acted as the principal, agent, or joint venturer of, or for, the other Defendant with respect to the acts, violations, and common course of conduct alleged herein.

## V.   CLASS ALLEGATIONS

58. Plaintiff brings this action individually and as a class action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of the following Classes:

   (a)   **FDCPA Class**

   All natural persons in the United States and its Territories to whom Defendants sent any letter that stated a "TOTAL DUE" greater than the stated "CHECK AMOUNT," or from whom one or both Defendants have collected or attempted to collect in whole or in part a returned check service charge beginning one year prior to the filing of this action and up through the date of judgment.

   (b)   **MCPA Class**

   All natural persons in the Commonwealth of Massachusetts to whom CPRS sent any letter that stated a "TOTAL DUE" greater than the stated "CHECK AMOUNT", or from whom one or both Defendants have collected or attempted to

---

https://www.ftc.gov/sites/default/files/documents/cases/2013/08/130815certegyorder.pdf (last viewed March 31, 2021).

collect in whole or in part a returned check service charge, beginning four years prior to the filing of this action and up through the date of judgment.

      (c)    **FCRA 1681e(b) Class**

All natural persons in the United States and its Territories for whom Certegy published to a retailer or merchant one or more "Not Authorized" transactions and/or otherwise negative check writing history when the natural person did not have any such transactions in his or her file beginning two years prior to the filing of this action and up through the date of judgment.

      (d)    **FCRA 1681g Class**

All natural persons in the United States and its Territories to whom Certegy sent a Consumer File Disclosure Report in response to the person's request, that did not disclose all transactions for which Certegy had previously reported or was reporting negative check writing history, beginning two years prior to the filing of this action and up through the date of judgment.

59.    Plaintiff reserves the right to amend the above class definitions based upon developments in this matter and discovery.

60.    The members of the Classes are so numerous that joinder of all is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that Defendants handle tens of thousands of consumer check authorizations and returned check fee assessments every year. Accordingly, Plaintiff estimates that the class size numbers in the thousands.

61.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions are whether the Defendants violated the FDCPA, FCRA and MCPA by:

      (a)    improperly imposing their own arbitrary fee in the collection of alleged debts;

      (b)    using improper and deceptive means in collecting alleged debts;

      (c)    making false statements in their form letters concerning the alleged debts;

  (d) attempting to collect and collecting amounts not expressly authorized by an agreement creating a debt or permitted by law;

  (e) failing to follow reasonable procedures to assure maximum possible accuracy of the information they report about consumers;

  (f) falsely reporting credit information about consumers with the alleged debts; and,

  (g) undermining the ability of consumers to dispute the accuracy of the alleged debts.

  62. The claims of Plaintiff are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

  63. Plaintiff will fairly and adequately protect the interests of the Classes. She is committed to vigorously litigating this matter and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this claim.

  64. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

  65. Whether Defendants unlawfully charged excess fees and made false statements and reports in the collection and reporting of a debt from the Plaintiff and the Classes can be easily

determined by a ministerial inspection of Defendants' business records.

66. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is slight because the unlawful charges are relatively small and the maximum statutory damages are limited to $1,000.00 under the FDCPA, FCRA and MCPA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

## VI.   CAUSES OF ACTION

**COUNT ONE – VIOLATION OF FDCPA**
*On Behalf of Plaintiff and the FDCPA Class v. Defendant Certegy*

60. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

61. Defendant Certegy is a "debt collector" as defined by section 1692a(6) of the FDCPA.

62. Plaintiff is a "consumer" as defined by section 1692a(3) of the FDCPA.

63. Defendant Certegy violated the FDCPA. Defendant's violations include violations of 15 U.S.C. §§ 1692e, 1692e(8), 1692f and 1692f(1), as evidenced by the following conduct:

    (a)   Falsely representing the amount, character or legal status of the debt;

    (b)   Attempting to and collecting amounts from the consumers that are not authorized by agreement or permitted by law;

    (c)   Communicating or threatening to communicate to any person credit information which is known, or which should be known to be false;

    (d)   Failing to validate a disputed debt; and

(e)   Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the consumer.

64. Defendant's acts as described above were done with intentional and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies not truly owed.

65. As a result of the above violations of the FDCPA, Defendant Certegy is liable to Plaintiff and the FDCPA Class in the sum of Plaintiff's statutory damages, actual damages and attorney's fees and costs.

## COUNT TWO – VIOLATION OF FDCPA
*On Behalf of Plaintiff and the FDCPA Class v. Defendant CPRS*

66. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

67. Defendant CPRS is a "debt collector" as defined by section 1692a(6) of the FDCPA.

68. Plaintiff is a "consumer" as defined by section 1692a(3) of the FDCPA.

69. Defendant CPRS violated the FDCPA. Defendant's violations include violations of 15 U.S.C. §§ 1692e, 1692e(8), 1692f and 1692f(1), as evidenced by the following conduct:

(a)   Falsely representing the amount, character or legal status of the debt;

(b)   Attempting to and collecting amounts from the consumers that are not authorized by agreement or permitted by law;

(c)   Communicating or threatening to communicate to any person credit information which is known, or which should be known to be false;

(d)   Failing to validate a disputed debt; and

(e) Otherwise using false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect a debt from the consumer.

70. Defendant's acts as described above were done with intentional and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies not truly owed.

71. As a result of the above violations of the FDCPA, Defendant CPRS is liable to Plaintiff and the FDCPA Class in the sum of statutory damages, actual damages and attorney's fees and costs.

## COUNT THREE – VIOLATION OF MCPA
*On Behalf of Plaintiff and the MCPA Class v. Defendants Certegy and CPRS*

72. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

73. Plaintiff and Defendants Certegy and CPRS are each a "person" as defined by Ch. 93A, § 1(a) of the MCPA.

74. A violation of the federal FDCPA is a *per se* violation of the MCPA. *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 775 F.3d 109 (1st Cir. 2014).

75. Defendants' acts as described above were done with intentional and negligent disregard for Plaintiff's rights under the law and with the purpose of coercing Plaintiff to pay monies not truly owed.

76. As a result of the above violations of the MCPA, Defendants are each liable to Plaintiff and the MCPA Class in the sum of statutory damages, actual damages and attorney's fees and costs.

## COUNT FOUR – VIOLATION OF FCRA
*On Behalf of Plaintiff and the FCRA 1681e(b) Class v. Defendant Certegy*

77. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

78. Defendant Certegy is a "person" and "consumer reporting agency" as those terms are defined by sections 1681a(b) and (f) of the FCRA.

79. Plaintiff is a "consumer" as that term is defined by section 1681a(c) of the FCRA.

80. The above-mentioned file and report were "consumer reports" as that term is defined by section 1681a(d) of the FCRA.

81. Pursuant to 15 U.S.C. § 1681n, Defendant is liable to Plaintiff and the FCRA 1681e(b) Class for violating the FCRA by failing to follow reasonable procedures to assure "maximum possible accuracy" of the reports it sold, in violation of 15 U.S.C. § 1681e(b).

## COUNT FIVE – VIOLATION OF FCRA
*On Behalf of Plaintiff and the FCRA 1681g Class v. Defendant Certegy*

82. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

83. Defendant Certegy is a "person" and "consumer reporting agency" as those terms are defined by sections 1681a(b) and (f) of the FCRA.

84. Plaintiff is a "consumer" as that term is defined by section 1681a(c) of the FCRA.

85. The above-mentioned file and report were "consumer reports" as that term is defined by section 1681a(d) of the FCRA.

86. Pursuant to 15 U.S.C. § 1681n, Defendant is liable to Plaintiff and the FCRA 1681g Class for violating the FCRA by failing to disclose all information in Plaintiff's file, in violation of 15 U.S.C. § 1681g(a).

87. As a result of the above violations of the FCRA, Defendant Certegy is liable to Plaintiff and the Class in the sum of statutory damages, actual damages, punitive damages and attorney's fees and costs.

### VII.  JURY TRIAL DEMAND

88. Plaintiff demands trial by jury on all issues so triable.

### VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that relief be granted as follows:

A. That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel to represent the Classes;

B. That an order be entered declaring that Defendants' actions as described above are in violation of the FDCPA, FCRA and MCPA;

C. That an order be entered directing Defendants to dispense with their unlawful and non-contractual fees for allegedly bounced checks;

D. That an order be entered enjoining Defendants under the MCPA from collecting unlawful and non-contractual fees for allegedly bounced checks;

E. That all such unlawfully collected fees be disgorged by Court Order;

F. That judgment be entered against Defendants for statutory damages under the FDCPA, FCRA and MCPA;

G. That judgment be entered against Defendants for actual, compensatory and/or restitution damages;

H. That judgment be entered against Defendants for actual, statutory and punitive damages under the FCRA;

     I.     That the Court award costs and reasonable attorney's fees under the FDCPA, FCRA and MCPA; and

     J.     That the Court grant such other and further relief as may be just and proper.

Dated: June 22, 2021

Respectfully submitted,

**MEGAN A. YOUNG**, *by her attorneys*,

*/s/Christopher M. Lefebvre*
Christopher M. Lefebvre BBO#629056
Two Dexter Street
Pawtucket, RI 02862
Tel: (401) 728-6060
Fax: (401) 728-6534

James A. Francis*
John Soumilas*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Attorneys for Plaintiff and the Classes

*application to appear *pro hac vice* forthcoming